UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOEL C. THIBODEAUX,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1375** |
| **WELLMATE, ET AL.**<br>    **Defendants** | **SECTION: "E" (5)** |

### ORDER AND REASONS

Before the Court is Defendant's motion *in limine* to strike the proposed testimony of Michael Wogalter.[1] For the reasons set forth below, the motion is **GRANTED**.

### BACKGROUND

Plaintiff Joel C. Thibodeaux ("Thibodeaux") brings claims against Defendant Pentair Water Treatment OH Company ("Pentair") under the Louisiana Products Liability Act ("LPLA").[2] Thibodeaux was injured after the bladder in a water pressure tank, manufactured by Pentair, ruptured on a platform operated by Chevron USA Inc., Thibodeaux's employer and the plaintiff-in-intervention.[3] Thibodeaux alleges, among other theories, that the tank "is unreasonably dangerous because an adequate warning about the product has not been provided."[4]

On February 5, 2016, Pentair filed a motion *in limine* with respect to the proposed testimony of Michael Wogalter, Ph.D.[5] Thibodeaux offers Wogalter, a professor of

---

[1] R. Doc. 95.
[2] LA. REV. STAT. §§ 9:2800.51–.60.
[3] R. Doc. 93-20 at 5; R. Doc. 101 at 10; R. Doc. 102-1 at 8.
[4] R. Doc. 77 at 2.
[5] R. Doc. 95.

1

psychology at North Carolina State University, as a human factors expert.[6] Thibodeaux filed an opposition to Pentair's motion *in limine* on February 23, 2016.[7]

## STANDARD OF LAW

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[8]

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[9] provides the analytical framework for determining whether expert testimony is admissible under Rule 702.

Under *Daubert*, courts, as "gatekeepers," are tasked with making a preliminary assessment of whether expert testimony is both relevant and reliable.[10] The party offering the expert opinion must show by a preponderance of the evidence that the expert's testimony is reliable and relevant.[11]

The reliability of expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid."[12] In *Daubert*, the Supreme Court enumerated several non-exclusive factors that courts may consider in

---

[6] R. Doc. 102-15.
[7] R. Doc. 99.
[8] FED. R. EVID. 702.
[9] 509 U.S. 579 (1993).
[10] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (citing *Daubert*, 509 U.S. at 592–93).
[11] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).
[12] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). *See also Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584–85 (5th Cir. 2003).

evaluating the reliability of expert testimony.[13] "These factors are (1) whether the expert's theory can or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community."[14]

The Supreme Court has cautioned that the reliability analysis must remain flexible: the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."[15] Thus, "not every *Daubert* factor will be applicable in every situation . . . and a court has discretion to consider other factors it deems relevant."[16] The district court is offered broad latitude in making expert testimony determinations.[17]

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility and should be left for the finder of fact.[18] "Unless wholly unreliable, the data on which the expert relies goes to the weight and not the admissibility of the expert opinion."[19] Thus, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[20] The Court is not concerned with whether the opinion is correct but whether

---

[13] *Daubert*, 509 U.S. at 592–96.
[14] *Bocanegra*, 320 F.3d at 584–85 (citing *Daubert*, 509 U.S. at 593–94).
[15] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).
[16] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 326 (5th Cir. 2004).
[17] *See, e.g., Kumho Tire*, 526 U.S. at 151–53.
[18] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).
[19] *Rosiere v. Wood Towing, LLC*, No. 07-1265, 2009 WL 982659, at *1 (E.D. La. Apr. 8, 2009) (citing *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)) (emphasis added); *Wolfe v. McNeil-PPC, Inc.*, No. 07-348, 2011 WL 1673805, at *6 (E.D. Pa. May 4, 2011).
[20] *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596) (internal quotation marks omitted).

the preponderance of the evidence establishes that the opinion is reliable.[21] "It is the role of the adversarial system, not the court, to highlight weak evidence."[22]

If the court concludes that a "'jury could adeptly assess [the] situation using only their common experience and knowledge,' there is no need for a full *Daubert* analysis"[23] because the testimony would not "help the trier of fact to understand the evidence or to determine a fact in issue."[24] "On the other hand, if the Court concludes that expert testimony would be helpful to assist the trier of fact, then *Daubert*'s impact must be considered."[25]

## ANALYSIS

In Wogalter's report, Wogalter renders an opinion on the adequacy of the warnings and instructions associated with the Wellmate 12 tank and concludes that the product's warning system is defective.[26] Wogalter bases his conclusion on three factors: salience of the warning, comprehension of the warning's content, and users' beliefs regarding the safety of the product.[27]

The Court finds that the matters on which Wogalter offers opinions are within the common understanding of the average juror and that Wogalter's opinions do not satisfy the requirement of Rule 702(a) that an expert's knowledge "help the trier fact to

---

[21] *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).
[22] *Primrose*, 382 F.3d at 562.
[23] *In re FEMA Trailer Formaldehyde Products Liab. Litig.*, No. MDL 07-1873, 2009 WL 2169224, at *3 (E.D. La. July 15, 2009) (quoting *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990)).
[24] FED. R. EVID. 702(a).
[25] *FEMA*, 2009 WL 2169224, at *3.
[26] R. Doc. 102-12 at 4. Curiously, Wogalter identifies only one warning, the warning on the drain assembly pipe, that Pentair may have placed on the tank. R. Doc. 102-12 at 8–10. The parties agree, however, that Wellmate 12 tanks manufactured from 2003 until late 2008 featured a data and warning label on the tank's exterior. See R. Doc. 93-1 at ¶ 14; R. Doc. 101-2 at ¶ 14. Wogalter does not consider or address the data and warning label in his report. See R. Doc. 102-12.
[27] R. Doc. 102-12 at 11–12.

understand the evidence or determine a fact in issue."[28] For example, with respect to salience, Wogalter states in his report:

> A warning must be noticed first and then examined. . . . Because the label was to be located on a pipe assembly at the bottom of the Wellmate tank, it was not positioned in the central visual field of the operator. While the operator may decide to get down on his/her knees to examine the label, given the print size and when combined with foreseeable weather-related degradation, it would be even more difficult to read. . . . I consider it to be a defective warning because of both placement and legibility affecting and attention[,] attraction[,] and maintenance.[29]

With respect to comprehension, Wogalter states, "It is well known from previous research within the human factors literature . . . that explicit warnings are better at informing product users about the hazard, consequences and the instructions than non-explicit or general warnings."[30] With respect to beliefs, Wogalter explains, "Beliefs are clusters of attitudes and memories that can be shaped from previous experiences. . . . [I]t was critical that the warnings be very well designed to overcome inappropriate/inaccurate beliefs about the safety of a product."[31] Based on his consideration of salience, comprehension, and beliefs, Wogalter concludes the Wellmate 12 tank's warning system is defective, determining that "[t]he on-product warning label should have been prominently displayed and included message text with explicit information about the hazard, how to avoid the hazard, and the consequences of failing to comply."[32] These matters, however, are not technical, specialized, or outside the understanding of the average juror. Indeed, "[t]he adequacy of the warning is a factual issue which the jury can handle without expert help from either side."[33] Accordingly, the Court finds that Wogalter's testimony would not

---

[28] FED. R. EVID. 702.
[29] *Id.* at 10–11.
[30] *Id.* at 11.
[31] *Id.* at 12.
[32] *Id.* at 13.
[33] *Calvit v. Procter & Gamble Mfg. Co.*, 207 F. Supp. 2d 527, 529 (M.D. La. 2002).

assist the jury, and there is no need for a full *Daubert* analysis.[34] Wogalter "seems to play the role of an 'uber-juror' rather than as an expert, offering opinions that invade the province of the jury."[35]

The Court will not allow any expert to testify regarding his or her perception of the adequacy of the warnings,[36] as the jurors will have the same appreciation for the warnings.[37] In addition, "conflicting expert opinions [regarding the warning system's adequacy] will not assist, indeed, they are more likely to confuse, the jury."[38] Accordingly, Pentair's motion *in limine* to exclude the proposed testimony of Wolgalter will be granted, and the Court *sua sponte* rules that no human factors expert may testify in this case and no expert may provide testimony regarding his or her perception of the adequacy of the tank's warnings.[39]

## CONCLUSION

**IT IS ORDERED** that Pentair's motion *in limine* to strike the proposed testimony of Michael Wogalter is **GRANTED**.

**IT IS FURTHER ORDERED** that, for the reasons stated above, Pentair's human factors expert Stephen Young is prohibited from testifying as an expert in this matter.[40]

**New Orleans, Louisiana, this 22nd day of May, 2016.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[34] *FEMA*, 2009 WL 2169224, at *3.
[35] *Id.*
[36] Pentair also offers a human factors expert, Stephen Young, Ph.D., who would testify about the adequacy of the tank's warnings and instructions. *See* R. Doc. 114-3 at 4.
[37] *See Wilson v. Thompson/Center Arms Co.*, 2007 WL 7688092, at *1 (E.D. La. 2007).
[38] *Calvit*, 207 F. Supp. 2d at 529.
[39] *See FEMA*, 2009 WL 2169224, at *4; *Wilson*, 2007 WL 7688092, at *1; *Calvit*, 207 F. Supp. 2d at 529.
[40] Young would also testify about the adequacy of the tank's warnings and instructions. *See* R. Doc. 114-3 at 4.

6