## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JOEL C. THIBODEAUX,**                                   **CIVIL ACTION**
    **Plaintiff**

**VERSUS**                                               **NO. 12-1375**

**WELLMATE, ET AL.**                                     **SECTION: "E" (5)**
    **Defendants**

### ORDER AND REASONS

Before the Court is Defendant's motion *in limine* regarding damages for past medical expenses sought by Plaintiff.[1] For the reasons set forth below, the motion is **GRANTED**.

### BACKGROUND

Plaintiff Joel C. Thibodeaux ("Thibodeaux") brings claims against Defendant Pentair Water Treatment OH Company ("Pentair") under the Louisiana Products Liability Act ("LPLA").[2] Thibodeaux was injured after the bladder in a water pressure tank, manufactured by Pentair, ruptured on a platform operated by Chevron USA Inc. ("Chevron"), Thibodeaux's employer and the plaintiff-in-intervention.[3]

Thibodeaux filed this suit on May 30, 2012,[4] and brings claims against Pentair under the Louisiana Products Liability Act.[5] Chevron filed a complaint in intervention on March 1, 2013, alleging it has paid indemnity and medical benefits to or on behalf of Thibodeaux under the Longshore and Harbor Workers' Compensation Act as a result of his injuries.[6]

---

[1] R. Doc. 117.
[2] LA. REV. STAT. §§ 9:2800.51–.60.
[3] R. Doc. 93-20 at 5; R. Doc. 101 at 10; R. Doc. 102-1 at 8.
[4] R. Doc. 1.
[5] LA. REV. STAT. §§ 9:2800.51–.60.
[6] R. Doc. 28.

On March 15, 2016, Pentair filed a motion *in limine* regarding the amount of damages Thibodeaux seeks for past medical expenses.[7] Thibodeaux filed an opposition on March 18, 2016,[8] and Pentair filed a reply in support of its motion *in limine* on March 23, 2016.[9]

## LAW AND ANALYSIS

At the time of Thibodeaux's accident, Thibodeaux was working within the course and scope of his employment with Chevron on a Chevron-operated platform.[10] Pursuant to the Longshore and Harbor Workers' Compensation Act,[11] Chevron has paid compensation for medical expenses to or on behalf of Thibodeaux in connection to his accident.[12] Although Thibodeaux contends his past medical bills total $626,529.68,[13] Chevron, Thibodeaux, and Pentair stipulated to the Court that, as of December 15, 2015, Chevron has paid $244,702.87 in medicals to or on behalf of Thibodeaux in connection to the accident.[14] The remainder of the medical bills was not paid because the medical providers accepted the lower amounts as payment in full.[15] Nevertheless, Thibodeaux seeks past medical damages of $626,529.68, which allegedly constitutes the total amount billed for Thibodeaux's medical treatment.[16]

Pentair filed the instant motion *in limine* to limit the amount of past medical damages Thibodeaux may recover to the amount actually paid and to exclude any evidence of portions of medical bills that were not paid and are not owed (the difference

---

[7] R. Doc. 117.
[8] R. Doc. 119.
[9] R. Doc. 123.
[10] *See* R. Doc. 116.
[11] 33 U.S.C. § 901, et seq.
[12] R. Doc. 116 at ¶ 2.
[13] R. Doc. 114 at 19–20; R. Doc. 119 at 3.
[14] *Id.* at ¶ 3.
[15] *See* R. Doc. 117-1 at 1–2; R. Doc. 119 at 5 n.6.
[16] R. Doc. 114 at 19–20; R. Doc. 119 at 3.

between the total amount billed and the amount actually paid, referred to in cases as the "write-off" amount).[17]

Whether Thibodeaux may recover the amount of medical bills by which the bills were reduced, which is the difference between the $626,529.68 allegedly billed and the $244,702.87 actually paid on Thibodeaux's behalf, is contingent upon whether the collateral source rule applies. If the collateral source rule applies, the plaintiff may recover the full value of his medical expenses, including the "write-off" amount.[18] If the collateral source rule does not apply, however, the plaintiff may not recover the "write-off" amount; the total amount the plaintiff may recover is limited to the amount actually paid for medical expenses.[19]

Pentair argues the collateral source rule is inapplicable because Thibodeaux's patrimony has not been reduced in any way with regard to Chevron's payment of the medical bills and Thibodeaux did not give consideration for the compensation benefits.[20]

Louisiana courts embrace and apply the collateral source rule, which is a rule of evidence and damages.[21] "Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution."[22] The payments a plaintiff receives from an independent source are not deducted from the award the aggrieved party would otherwise receive from the tortfeasor.

---

[17] R. Doc. 117-1 at 2, 7.

[18] *Bozeman v. State*, 879 So. 2d 692, 703–05 (La. 2004). *See also Griffin v. La. Sheriff's Auto Risk Ass'n*, 1999-2944 (La. App. 1 Cir. 6/22/01), 802 So. 2d 691, 713–15, *writ denied*, 2001-2117 (La. 11/9/01), 801 So. 2d 376.

[19] *See, e.g., Bozeman*, 879 So. 2d at 700–06; *Griffin*, 802 So. 2d at 713–15.

[20] R. Doc. 117-1 at 7.

[21] *Bozeman*, 879 So. 2d at 697.

[22] *Id.* at 698.

As the Louisiana Supreme Court explained in *Bozeman v. State*, "[a]s a result of the collateral source rule, the tortfeasor is not able to benefit from the victim's foresight in purchasing insurance and other benefits."[23]

There are two primary considerations for determining whether the collateral source rule applies: "(1) whether application of the rule will further the major policy goal of tort deterrence; and (2) whether the victim, by having a collateral source available as a source of recovery, either paid for such benefit or suffered some diminution in his or her patrimony because of the availability of the benefit, such that no actual windfall or double recovery would result from application of the rule."[24]

For example, in *Bozeman*, the Louisiana Supreme Court held that Medicaid recipients cannot collect Medicaid "write-off" amounts as damages because no consideration is provided for the Medicaid benefit.[25] The court concluded that a plaintiff's recovery is limited to what is actually paid by Medicaid.[26] The court explained, however, that "where [a] plaintiff's patrimony has been diminished in some way in order to obtain the collateral source benefits, then plaintiff is entitled to the benefit of the bargain, and may recover the full value of his medical services, including the 'write-off' amount."[27]

In *Bellard v. American Cent Insurance Co.*, the Louisiana Supreme Court recognized that a "troubling aspect" of the rule with which courts have struggled is "the double recovery or windfall that might arise as a consequence of the victim's receipt of an outside payment": "The purpose of tort damages is to make the victim whole. This goal is

---

[23] *Id.*
[24] *Lockett v. UV Ins. Risk Retention Grp., Inc.*, 15-166 (La. App. 5 Cir. 11/19/15), 180 So. 3d 557, 570, *reh'g denied* (Dec. 9, 2015) (citing *Bellard v. Am. Cent. Ins. Co.*, 980 So. 2d 654, 669 (La. 2008)). *See also Hoffman v. 21st Century N. Am. Ins. Co.*, 2015 WL 5776131, at *3 (La. 2015).
[25] *Bozeman*, 879 So. 2d at 705.
[26] *Id.* at 705–06.
[27] *Id.* at 706.

thwarted, and the law is violated, when the victim is allowed to recover the same element of damages twice."[28] In *Bellard*, the uninsured motorist carrier for the victim's employer sought a credit for disability wage and medical benefits paid by the employer or its workers' compensation carrier.[29] The court acknowledged that the tortfeasor would not receive any benefit or reduction in liability as a result of the credit but also emphasized that the plaintiff had not given consideration for workers' compensation benefits. The court noted that application of the collateral source rule in the case would allow the plaintiff to receive a windfall or double recovery.[30] The court explained that, "unlike sick leave, annual leave, or employer-provided health insurance, workers' compensation benefits cannot be considered a fringe benefit in the nature of deferred compensation that would otherwise be available to the plaintiff but for his injury. To the contrary, workers' compensation benefits are required by law, and that same law prohibits an employer from assessing an employee, either directly or indirectly, with the cost of workers' compensation insurance."[31]

In *Hoffman v. 21st Century North America Insurance Co.*, the Louisiana Supreme Court reiterated that, in both *Bozeman* and *Bellard*, the court "emphasized [that] a fundamental consideration for application of the collateral source rule, in addition to tort deterrence, is 'whether the victim, by having a collateral source available as a source of recovery, either paid for such benefit or suffered some diminution in his or her patrimony because of the availability of the benefit, such that no actual windfall or double recovery would result from application of the rule.'"[32]

---

[28] *Bellard*, 980 So. 2d at 668.
[29] *Id.* at 670.
[30] *Id.* at 679.
[31] *Id.* at 670.
[32] *Hoffman*, 2015 WL 5776131, at *3 (quoting *Bellard*, 980 So. 2d at 669).

In *Hoffman*, the plaintiff's attorney negotiated a discount on plaintiff's medical expenses with the medical provider.[33] The plaintiff argued that his recovery should not be limited to merely the medical expenses actually paid because, under the collateral source rule, he was entitled to the total billed amount, including the "written-off" portion of the bill.[34] The Louisiana Supreme Court disagreed, holding that an attorney-negotiated medical discount, or "write-off," is not a payment or benefit that falls within the ambit of the collateral source rule.[35] The court explained that "allowing the plaintiff to recover an amount for which he has not paid, and for which he has no obligation to pay, is at cross purposes with the basic principles of tort recovery in our Civil Code."[36] The court noted that "[t]he plaintiff has suffered no diminution of his patrimony to obtain the write-off, and, therefore, the defendant in this case cannot be held responsible for any medical bills or services the plaintiff did not actually incur and which the plaintiff need not repay."[37]

Louisiana's jurisprudence on the collateral source rule is in accord with that of the United States Court of Appeals for the Fifth Circuit. For example, the Fifth Circuit has explained that, "for the [collateral source] rule to apply to 'write-off' amounts of medical expenses that were billed but not paid because a third-party negotiated a lesser amount, the plaintiff must give some consideration for the benefit obtained or otherwise suffer a diminution of patrimony."[38]

Thibodeaux gave no consideration for the compensation Chevron provided pursuant to the Longshore and Harbor Workers' Compensation Act. Indeed,

---

[33] *Id.* at *1.
[34] *Id.*
[35] *Id.* at *5–*6.
[36] *Id.* at *4.
[37] *Id.*
[38] *Miciotto v. United States*, 270 F. App'x 301, 303 (5th Cir. 2008) (per curiam) (citing *Bozeman*, 879 So. 2d at 705–06).

compensation benefits, including for medical services and supplies, are required by law.[39] There is no evidence that Thibodeaux suffered any diminution of patrimony. Rather, the crux of Thibodeaux's argument is that, even though he did not suffer a reduction in his patrimony, the policy goal of tort deterrence justifies his recovery of the full amount billed.[40] Finding the collateral source rule inapplicable here, however, does not frustrate the purpose of the collateral source rule, as Thibodeaux argues.[41] Thibodeaux may still recover from Pentair all medical expenses actually paid on his behalf, which will deter wrongful conduct by holding the tortfeasor responsible for the amount paid.[42]

"[W]here the plaintiff . . . provides no consideration for the collateral source benefits he receives, . . . the plaintiff is unable to recover the 'write-off' amount."[43] Because Thibodeaux provided no consideration for the benefits paid pursuant to the Longshore and Harbor Workers' Compensation Act, the collateral source rule is inapplicable, and Thibodeaux may not recover past medical expenses billed but "written off" by the medical provider and thus not paid by Chevron.[44] Thibodeaux may seek to recover only the amount of past medical expenses that have been paid on his behalf by Chevron ($244,702.87).

The Court, however, will allow Thibodeaux to inform the jury of the total amount billed, including the "write-off" amounts, in addition to the amount actually paid. The Court finds that evidence of the total amount of past medical expenses billed has some

---

[39] *See* 33 U.S.C. § 907. *See also Bellard*, 980 So. 2d at 670.
[40] R. Doc. 117 at 3–4.
[41] *Id.* at 4.
[42] *See Hoffman*, 2015 WL 5776131, at *4.
[43] *Bozeman*, 879 So. 2d at 705.
[44] *See id.* ("Any recovery above $950.00 for the MRIs would amount to a windfall and force the defendant to compensate the plaintiff for medical expenses the plaintiff has neither incurred nor is obligated to pay.").

probative value that is not substantially outweighed by any risk of unfair prejudice.[45] The Court encourages the parties to enter into a stipulation, if possible, with respect to the total amount billed and the total amount paid on Thibodeaux's behalf in the interest of streamlining the issues at trial.

**CONCLUSION**

For the foregoing reasons;

**IT IS ORDERED** that Pentair's motion *in limine* is **GRANTED IN PART** and **DENIED IN PART**. Thibodeaux may not seek to recover the "write-off" amounts. Thibodeaux may not recover more damages for past medical expenses than the amount actually paid on his behalf. He may, however, inform the jury of the total amount of past medical expenses billed.

**New Orleans, Louisiana, this 22nd day of May, 2016.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[45] *See* FED. R. EVID. 403.