## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOEL C. THIBODEAUX,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  12-1375** |
| **WELLMATE, ET AL.**<br>    **Defendants** | **SECTION: "E" (5)** |

## ORDER AND REASONS

Before the Court is Defendant's motion *in limine* regarding evidence of subsequent remedial measures.[1] For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiff Joel C. Thibodeaux ("Thibodeaux") brings claims against Defendant Pentair Water Treatment OH Company ("Pentair") under the Louisiana Products Liability Act ("LPLA").[2]  Thibodeaux was injured after the bladder in a water pressure tank, manufactured by Pentair, ruptured on a platform operated by Chevron USA Inc. ("Chevron"), Thibodeaux's employer and the plaintiff-in-intervention.[3]

Thibodeaux filed this suit on May 30, 2012,[4] and brings claims against Pentair under the Louisiana Products Liability Act.[5] Chevron filed a complaint in intervention on March 1, 2013, and alleges it has paid indemnity and medical benefits to or on behalf of Thibodeaux under the Longshore and Harbor Workers' Compensation Act as a result of his injuries.[6]

---

[1] R. Doc. 126.
[2] LA. REV. STAT. §§ 9:2800.51–.60.
[3] R. Doc. 93-20 at 5; R. Doc. 101 at 10; R. Doc. 102-1 at 8.
[4] R. Doc. 1.
[5] LA. REV. STAT. §§ 9:2800.51–.60.
[6] R. Doc. 28.

On March 24, 2016, Pentair filed a motion *in limine* regarding evidence of subsequent remedial measures.[7] Thibodeaux filed an opposition on March 31, 2016.[8]

## LAW AND ANALYSIS

Pentair seeks to exclude evidence of "subsequent remedial measures," including (1) design changes to Wellmate 12 tanks following the date of manufacture of the subject tank, and (2) warning signs and procedures applied to water pressure tanks by Chevron after Thibodeaux's accident.[9]

Rule 407 of the Federal Rules of Evidence governs the admissibility of evidence of subsequent remedial measures:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> - negligence;
>
> - culpable conduct;
>
> - a defect in a product or its design; or
>
> - a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures.[10]

The goal underlying Rule 407 is to "encourag[e] people to take, or at least not [to discourage] them from taking, steps in furtherance of added safety."[11] "The rule also seeks to ensure that negligence is properly determined according to what the defendant knew

---

[7] R. Doc. 126.
[8] R. Doc. 133.
[9] R. Doc. 126-2 at 3.
[10] FED. R. EVID. 407.
[11] FED. R. EVID. 407 advisory committee's note to 1972 proposed rule. *See also Adams v. Chevron USA, Inc.*, 383 F. App'x 447, 452 (5th Cir. 2010).

or should have known prior to the accident, not what the defendant knew as a result of the accident."[12]

I.      Pentair's Design Changes to Wellmate 12 Tanks

Pentair argues that "evidence of Pentair's design changes to the bladder and drain fitting on Wellmate tanks after the date of manufacture [is] not admissible under Rule 407."[13] Pentair contends that admitting such evidence "would be unfairly prejudicial to Pentair by incorrectly suggesting that the post-manufacture modifications demonstrate that the original design was defective"[14] and that "[t]his prejudicial effect . . . demands that evidence of post-manufacture design changes be excluded under Rule 407."[15]

Joel Voytek, a Pentair product manager,[16] testified in his deposition that Pentair made a design change to Wellmate products that began to take effect in March 2009 and was completely integrated with the product line by the end of 2010.[17] Thibodeaux's accident occurred on July 5, 2011.[18]

The Fifth Circuit has made clear that Rule 407 does not apply to evidence of changes, even remedial measures, made before the accident giving rise to the litigation. "By definition, the rule excludes only post-accident remedial measures."[19] "The admission of evidence of changes made merely to improve a product, as distinguished from remedial measures that make an 'injury or harm less likely to occur,' is not barred by the rule."[20] The advisory committee notes underscore that Rule 407 applies only to evidence of post-

---

[12] *Adams*, 383 F. App'x at 452 (internal quotation marks omitted).
[13] R. Doc. 126-2 at 4–5.
[14] *Id.*
[15] *Id.* at 5.
[16] *See* R. Doc. 102-5 at 3.
[17] R. Doc. 126-5 at 2.
[18] *See, e.g.,* R. Doc. 114 at 6 (listing as an uncontested material fact that "Joel Thibodeaux was injured . . . on July 5, 2011); R. Doc. 102-3 at 8; R. Doc. 126-2 at 3.
[19] *Brazos River Auth. V. GE Ionics, Inc.*, 469 F.3d 416, 429–30 (5th Cir. 2006).
[20] *Id.* at 428.

accident remedial measures: "Evidence of measures taken by the defendant prior to the 'event' causing 'injury or harm' do not fall within the exclusionary scope of Rule 407 even if they occurred after the manufacture or design of the product."[21]

Accordingly, evidence of Pentair's design changes to Wellmate tanks before Thibodeaux's accident is not inadmissible under Rule 407, and Pentair's motion *in limine* with respect to evidence of Wellmate's design changes is denied.

II.    Warning Signs and Procedures Employed by Chevron after Thibodeaux's Accident

Pentair argues that evidence of warning signs and procedures with respect to water pressure tanks that were implemented by Chevron after the accident is neither relevant nor admissible. Pentair contends that such evidence "creates a danger of confusing the jury regarding the role of Pentair as a product manufacturer[] and the jury's evaluation of the actual content, placement, and adequacy of the warnings that were provided by Pentair *at the time the tank was manufactured.*"[22] Pentair also argues that evidence of Chevron's post-accident warnings and procedures would impermissibly invite the jury "to compare and contrast the contents of [Chevron's] procedure to the written product literature provided by Pentair."[23]

Thibodeaux argues that evidence of Chevron's post-accident warnings and policies is relevant to the inadequacy of Pentair's warning system because, "[i]f the warnings Pentair allegedly applied to the water tank were adequate, then Chevron would have been less likely to take the steps needed to improve the warnings on every water tank on all of its platforms across the Gulf of Mexico."[24]

---

[21] FED. R. EVID. 407 advisory committee's note to 1997 amendments.
[22] R. Doc. 126-2 at 6.
[23] *Id.* at 7.
[24] R. Doc. 133 at 7–8.

"[N]either the text of rule 407 nor the policy underlying it excludes evidence of subsequent repairs made by someone other than the defendant."[25] "Any evidence not excluded by Rule 407, of course, must still be relevant and its probative value must, under Rule 403, outweigh any dangers associated with its admission."[26]

Evidence of the warnings and procedures implemented by Chevron after the accident is not relevant to whether Pentair's warnings were adequate "at the time the product left its manufacturer's control."[27] Further, feasibility is not at issue in this case. The Fifth Circuit "ha[s] held in several product liability cases . . . that evidence of subsequent changes by third parties is properly excludable because of its tendency to 'confuse the jury by diverting its attention from whether the product was defective at the relevant time [i.e., the time of manufacture] to what was done later.'"[28] The Court finds that evidence of the warning system and procedures Chevron implemented after Thibodeaux's accident risks confusing the jury and that its limited probative value is substantially outweighed by dangers of prejudice, confusing the issues, and misleading or confusing the jury.[29] Pentair's motion *in limine* regarding evidence of Chevron's post-accident implementation of warnings and procedures with respect to water pressure tanks is granted.

## CONCLUSION

For the foregoing reasons;

---

[25] *Grenada Steel Indus., Inc. v. Alabama Oxygen Co.*, 695 F.2d 883, 889 (5th Cir. 1983).
[26] *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 584 (5th Cir. 1985).
[27] LA. REV. STAT. § 9:2800.57.
[28] *Middleton v. Harris Press & Shear, a Subsidiary of Am. Hoist & Derrick Co.*, 796 F.2d 747, 752 (5th Cir. 1986) (quoting *Grenada Steel*, 695 F.2d at 888, 889).
[29] FED. R. EVID. 403.

**IT IS ORDERED** that Pentair's motion *in limine* is **GRANTED IN PART** and

**DENIED IN PART** as set forth above.

New Orleans, Louisiana, this 22nd day of May, 2016.

_____

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**