## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOEL C. THIBODEAUX,** | **CIVIL ACTION** |
| **Plaintiff** | |
| | |
| **VERSUS** | **NO.  12-1375** |
| | |
| **WELLMATE, ET AL.** | **SECTION: "E" (5)** |
| **Defendants** | |

## ORDER AND REASONS

Before the Court is Defendant's motion for summary judgment.[1] For the reasons set forth below, the motion is **DENIED**.

## BACKGROUND

This is a products liability action. Plaintiff Joel C. Thibodeaux ("Thibodeaux") was hired by Plaintiff-in-Intervention Chevron USA Inc. in June 2007 as an operator.[2] A Wellmate 12 tank, manufactured by Defendant Pentair Water Treatment OH Company ("Pentair"), was installed as part of a potable water system on the Chevron-operated platform on which Thibodeaux was working.[3] On July 5, 2011, Thibodeaux and two of his coworkers, Fred Adams ("Adams") and Matt Duhon ("Duhon"), attempted to address a pressure-related issue with the water pressure tank.[4] Thibodeaux, Adams, and Duhon isolated the tank from the system, bled all the water pressure from the system, and disconnected the plumbing connecting the tank's drain assembly to the system.[5] While Thibodeaux was unscrewing the threaded drain assembly from the bottom of the tank,[6]

---

[1] R. Doc. 93.
[2] R. Doc. 93-4 at 4.
[3] *Id.* at 5–6, 10–11.
[4] R. Doc. 93-5 at 6–7; R. Doc. 93-6 at 3; R. Doc. 93-1 at ¶ 21; R. Doc. 101-2 at ¶ 21.
[5] R. Doc. 93-6 at 4; R. Doc. 93-1 at ¶ 22; R. Doc. 101-2 at ¶ 22.
[6] R. Doc. 93-4 at 18–19; R. Doc. 102-1 at 7; R. Doc. 93-6 at 4.

pressure in the bladder released and Thibodeaux was injured.[7] Thibodeaux testified in his deposition that every bone from his eyebrow to his chin was fractured, and he has undergone several medical procedures and extensive treatment as a result.[8]

Thibodeaux filed this lawsuit on May 30, 2012.[9] In his third amended complaint,[10] Thibodeaux brings claims against Pentair under the Louisiana Products Liability Act ("LPLA").[11]

On February 5, 2016, Pentair filed a motion for summary judgment arguing (1) Thibodeaux cannot establish any of the required elements under the LPLA, and (2) Pentair discharged its duty to warn when it provided warnings to Chevron.[12] Thibodeaux filed his opposition on February 23, 2016,[13] and Pentair filed a reply memorandum in support of its motion on March 2, 2016.[14]

## STANDARD OF LAW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] "An issue is material if its resolution could affect the outcome of the action."[16]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[17] If the

---

[7] R. Doc. 93-20 at 5; R. Doc. 101 at 10; R. Doc. 102-1 at 8.
[8] R. Doc. 93-4 at 23.
[9] R. Doc. 1.
[10] R. Doc. 77.
[11] LA. REV. STAT. §§ 9:2800.51–.60.
[12] R. Doc. 93.
[13] R. Doc. 101.
[14] R. Doc. 107.
[15] FED. R. CIV. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[16] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[17] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[18]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[19] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[20] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[21] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose

---

[18] *Celotex*, 477 U.S. at 322–24.

[19] *Id.* at 331–32 (Brennan, J., dissenting).

[20] *See id.* at 332.

[21] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.

upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[22]

## LAW AND ANALYSIS

The Louisiana Products Liability Act provides the "the exclusive theories of liability for manufacturers for damage caused by their products" under Louisiana law.[23] "The plain language of the Act shows that a plaintiff, asserting a products liability action against a manufacturer, faces a two-tiered burden: the plaintiff must show that (1) his damages were proximately caused by a characteristic of the product that renders it unreasonably dangerous, and (2) his damages arose from a reasonably anticipated use of the product."[24] If a plaintiff's damages did not arise from a reasonably anticipated use of the product, the Court need not reach the "unreasonably dangerous" inquiry.[25]

Pentair argues in its motion for summary judgment that Thibodeaux cannot establish either prong required to prevail in a products-liability action because he cannot demonstrate that his damages arose from a reasonably anticipated use of the tank, that the tank was unreasonably dangerous, or that any characteristic that rendered the tank unreasonably dangerous caused his damages.[26] Finally, Pentair raises the sophisticated-

---

[22] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

[23] LA. STAT. ANN. § 9:2800.52. *See also Kampen v. American Isuzu Motors, Inc.*, 157 F.3d 306, 309 (5th Cir. 1998).

[24] *Blanchard v. Midland Risk Ins.*, 2001-1251 (La. App. 3 Cir. 5/8/02), 817 So. 2d 458, 460, *writ denied*, 2002-1517 (La. 9/20/02), 825 So. 2d 1178, *and writ denied*, 2002-1594 (La. 9/20/02), 825 So. 2d 1181 (quoting *Kampen*, 157 F.3d at 309–10). *See also* LA. STAT. ANN. § 9:2800.54(D); *Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 331 (5th Cir.), *opinion amended on denial of reh'g*, 274 F.3d 881 (5th Cir. 2001).

[25] *Kampen*, 157 F.3d at 309. *See also Kelley v. Hanover Ins. Co.*, 98-506 (La. App. 5 Cir. 11/25/98), 722 So. 2d 1133, 1136, *writ denied*, 98-3168 (La. 2/12/99), 738 So. 2d 576 ("[B]efore reaching the question whether a product is unreasonably dangerous because of an inadequate warning, a plaintiff must first meet the threshold requirement of Sec. 2800.54 A, which is that the injury arose from a 'reasonably anticipated use' of the product. It is only after such use is shown that the inquiry moves on to whether an adequate warning was required.").

[26] R. Doc. 93-20 at 13–21.

user defense, arguing it discharged its duty to warn Thibodeaux by warning Chevron, a sophisticated user.[27]

I.    Did Plaintiff's Damages Arise from a Reasonably Anticipated Use?

"Under the LPLA, a manufacturer is liable only for those uses it should reasonably expect of an ordinary consumer."[28] The LPLA defines "reasonably anticipated use" as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances."[29] Courts determine what uses of a product its manufacturer should have reasonably expected at the time of manufacture.[30] "The standard for determining a reasonably anticipated use is an objective one (an ordinary person in the same or similar circumstances)."[31] Whether a plaintiff's damages arose from a reasonably anticipated use of the challenged product is a question of fact.[32] "The court's function on a motion for summary judgment concerning a reasonably anticipated use is to determine whether there is a legally sufficient evidentiary basis in a particular case for a reasonable juror or trier of fact to find for the plaintiff."[33]

When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[34] All reasonable inferences are drawn in favor of the non-moving

---

[27] *Id.* at 21–23.

[28] *Butz v. Lynch,* 1999-1070 (La. App. 1 Cir. 6/23/00), 762 So. 2d 1214, 1218, *writ denied,* 2000-2660 (La. 11/17/00), 774 So. 2d 980.

[29] LA. STAT. ANN. § 9:2800.53.

[30] *Blanchard,* 817 So. 2d at 460.

[31] *Butz,* 762 So. 2d at 1218.

[32] *Ellis,* 258 F.3d at 331; *White v. Black & Decker (U.S.) Inc.,* No. 03-0874, 2004 WL 1373271, at *3 (E.D. La. June 16, 2004), *aff'd sub nom. White v. Black & Decker (US) Inc.,* 122 F. App'x 795 (5th Cir. 2005); *Scordill v. Louisville Ladder Grp., LLC,* No. 02-2565, 2003 WL 22427981, at *8 (E.D. La. Oct. 24, 2003).

[33] *Calvit v. Procter & Gamble Mfg. Co.,* 207 F. Supp. 2d 527, 530 (M.D. La. 2002).

[34] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). *See also Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000).

party.[35] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[36]

The Court finds a genuine issue of material fact exists with respect to whether this was a reasonably anticipated use. Pentair claims a warning was on the tank and that Thibodeaux used the tank in direct violation of the warning.[37] Thibodeaux denies this and argues that Pentair has failed to present evidence that the particular Wellmate 12 tank involved in Thibodeaux's accident had a warning on it when it left Pentair's control.[38]

Pentair's corporate representative Joel Voytek testified in his deposition that, although Pentair could not tell exactly when the tank was manufactured as the serial number was not visible on the tank, Pentair determined based on the tank itself that it was manufactured sometime between 2003 and 2008.[39] The parties do not dispute this.[40] Craig Berkenmeier, a member of Chevron's root cause analysis team, testified in his deposition that repair records for the Chevron platform on which Thibodeaux was injured indicate that the potable water pressure tank was replaced in January of 2006,[41] and the parties have stipulated that the Wellmate 12 tank was placed on the platform in January 2006.[42] Although Pentair's corporate representative testified that, ordinarily, tanks manufactured between 2003 and approximately August 2006 would have had a label on the drain assembly,[43] Pentair has not presented competent summary judgment evidence

---

[35] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[36] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[37] R. Doc. 93-20 at 13.
[38] *See* R. Doc. 101 at 12.
[39] R. Doc. 93-3 at 4–5.
[40] R. Doc. 93-1 at ¶ 4; R. Doc. 101-2 at ¶ 4. *See also* R. Doc. 93-3 at 5.
[41] R. Doc. 93-12 at 12–15.
[42] *See* R. Doc. 114 at 7; R. Doc. 174 at 1; R. Doc. 93-20 at 10.
[43] R. Doc. 93-3 at 11–13; R. Doc. 93-8.

to establish that, viewing the evidence in the light most favorable to the non-moving party, no reasonable person could find to the contrary.[44] There are not sufficient undisputed facts for the Court to make this determination, and summary judgment may not be granted in favor of Pentair on this basis.

II.   Were Plaintiff's Damages Proximately Caused by a Characteristic that Renders the Tank Unreasonably Dangerous?

A.   Unreasonably Dangerous

Pentair argues that Thibodeaux lacks sufficient evidence to establish that the Wellmate 12 was unreasonably dangerous.[45]

Under the LPLA, a product may be deemed unreasonably dangerous in any one of four ways: (1) in construction or composition; (2) in design; (3) for failure to provide an adequate warning; or (4) for failure to conform to an express manufacturer's warranty.[46] Each is a distinct possible theory of recovery governed by separate statutes as delineated in La. Rev. Stat. § 9:2800.54(B), and proof of any one is sufficient.[47]

Thibodeaux argues in his opposition that there are genuine issues of material fact regarding whether the product was unreasonably dangerous (1) in construction or composition, (2) in design, and (3) for failure to provide an adequate warning.[48] The Court finds there are genuine issues of material fact regarding whether the product was unreasonably dangerous with respect to all three theories.

---

[44] *Smith*, 298 F.3d at 440.
[45] R. Doc. 93-20 at 18–21.
[46] LA. REV. STAT. § 9:2800.54(B); *Reynolds v. Bordelon*, 2014-2371 (La. 6/30/15), 172 So. 3d 607, 612–15.
[47] LA. REV. STAT. § 9:2800.54(B).
[48] R. Doc. 101 at 25. Thibodeaux does not address (4) failure to conform to an express manufacturer's warranty in his opposition. *Id.*

7

### 1. Construction or Composition

La. Rev. Stat. § 9:2800.55 provides that "[a] product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer."[49] Whether a defect is unreasonably dangerous in construction or composition is a question of fact.[50]

Pentair argues Thibodeaux lacks sufficient evidence to establish that the tank was unreasonably dangerous in design.[51]

Thibodeaux's materials science expert Cynthia Smith concluded that the tank was unreasonably dangerous in construction and composition and will testify as such at trial.[52] She based this conclusion in part her conclusion that there was a "network of raised features [she] observed across the entire exterior surface of the air cell" and her finding that "[t]he hardness of the air cell material was below the manufacturer's specified range, indicating the material was softer than it should have been."[53] Smith also found that "[t]he air cell material . . . exhibited a melt flow rate that was well above the manufacturer's specified range, indicating that the material either did not conform to the manufacturer's specification at the time of manufacturer, or that the material was insufficiently stabilized to prevent degradation during service."[54]

---

[49] LA. REV. STAT. § 9:2800.55.
[50] *Morris v. United Servs. Auto. Ass'n*, 32,528 (La. App. 2 Cir. 2/18/00), 756 So. 2d 549, 557.
[51] R. Doc. 93-20 at 18.
[52] R. Doc. 102-13 at 8.
[53] *Id.*
[54] *Id.*

Pentair has not shown a lack of evidence such that no reasonable trier of fact could find in favor of the plaintiff. Thibodeaux has provided sufficient competent summary judgment evidence to raise a genuine issue of material fact as to whether the tank was unreasonably dangerous in construction or composition.

*2. Design*

La. Rev. Stat. § 2800.56 defines a product that is unreasonably dangerous in design:

> A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
>
> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
>
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.[55]

Whether a defect is unreasonably dangerous in design is a question of fact.[56]

The Wellmate 12 tank contained an internal air cell, or bladder, attached to both the top of the tank and the drain assembly at the bottom of the tank.[57] Edward Lebreton, Pentair's former chief engineer, testified at his deposition that most water tanks of this type connect the air cell only at the top of the tank, leaving only water at the bottom of the tank.[58] Lebreton stated in his deposition that he did not know of any other water pressure tanks that were designed to connect the air cell both to the top and bottom of the tank.[59]

---

[55] LA. REV. STAT. § 9:2800.56.
[56] *Morris*, 756 So. 2d at 557.
[57] *See* R. Doc. 93-4 at 11; R. Doc. 102-6 at 17–20.
[58] R. Doc. 102-6 at 17–20.
[59] *Id.* at 19.

9

Smith opines in her report that the tank was unreasonably dangerous in design.[60] She identified Pentair's attachment of the air cell to the tank as a design defect: "the air cell was attached to [the] bottom of the drain assembly, where it could become twisted and tear. If the air cell had been attached to the top of the tank as is common in pressure tanks manufactured by other companies, this accident could not have happened."[61]

Smith testified in her deposition that the air cell became caught on the drain assembly, which had sharp corners, causing the air cell to twist as the drain assembly was unscrewed.[62] "[B]ased on Pentair's design, the air cell should have rotated freely within the drain pipe and should not have been impacted by unthreading the drain pipe."[63] Smith referred to this as a "defective design."[64]

Pentair has not shown a lack of evidence such that no reasonable trier of fact could find in favor of the plaintiff. Thibodeaux has provided sufficient competent summary judgment evidence to raise a genuine issue of material fact as to whether the tank was unreasonably dangerous in design.

### 3. Warning

With respect to a manufacturer's duty to provide an adequate warning, La. Rev. Stat. § 9:2800.57 provides in pertinent part:

> A. A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care

---

[60] *See* R. Doc. 102-13 at 15.

[61] *Id.*

[62] R. Doc. 93-14 at 17–18 ("I believe that it caught at the exterior, and as the air cell twisted, material was extruded outward from the interior of the air cell toward the exterior of the air cell, resulting in a hole that is deformed outward toward the exterior surface."). Expert opinion testimony in the form of a deposition may be considered in support of or in opposition to a motion for summary judgment. *Bourgeois v. Garrard Chevrolet, Inc.*, 2002-0288 (La. App. 4 Cir. 2/21/02), 811 So. 2d 962, 966, writ denied, 2002-0846 (La. 5/24/02), 816 So. 2d 854.

[63] R. Doc. 93-14 at 35.

[64] R. Doc. 93-14 at 29.

10

to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

B.  A manufacturer is not required to provide an adequate warning about his product when:

(1)  The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or

(2)  The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.[65]

The LPLA defines "adequate warning" as "a warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the damage for which the claim is made."[66]

Pentair concedes it was required to provide an adequate warning but argues that Thibodeaux cannot demonstrate that the warnings were inadequate when the tank left Pentair's control.[67]  Thibodeaux, on the other hand, contends that Pentair's warnings were inadequate "due to their content, placement, and absence."[68]

The plaintiff bears the burden of establishing that, at the time the product left the manufacturer's control, the manufacturer failed to provide an adequate warning.[69] "Whether a particular warning or instruction is adequate is a question for the trier of fact."[70] When determining the adequacy of a warning, the trier of fact considers the

---

[65] LA. REV. STAT. § 9:2800.57.
[66] LA. REV. STAT. § 9:2800.53(9).
[67] R. Doc. 93-20 at 13–17, 20–21.
[68] R. Doc. 101 at 16.
[69] *Jack v. Alberto-Culver USA, Inc.*, 2006-1883 (La. 2/22/07), 949 So. 2d 1256, 1258.
[70] *Id.* at 1259.

severity of the danger, the likelihood of successful communication of the warning to foreseeable consumers, the intensity and form of the warning, and the cost of improving the strength or mode of the warning.[71]

As previously discussed, Pentair has failed to establish that no reasonable trier of fact could conclude there was not a warning on the tank at the time of manufacture.[72] Moreover, "[t]he adequacy of a particular warning is a question for the trier of fact, and should usually not be determined at summary judgment."[73]

B.  Causation

Pentair further argues Thibodeaux cannot establish that an unreasonably dangerous condition caused his accident.[74]

The Court finds there are genuine issues of material fact regarding causation. Smith opined in her report that, "[i]f the air cell had been attached to the top of the tank[, . . .] this accident could not have happened."[75] Pentair has failed to establish that no reasonable trier of fact could find that the air cell's being attached to the bottom of the tank was the cause of the accident.

III.    Is Defendant Entitled to Summary Judgment on the Sophisticated-User Defense?

Pentair argues that Thibodeaux cannot succeed on his failure-to-warn claim because Pentair discharged its duty to warn by warning Chevron, a sophisticated user.

---

[71] *Bloxom v. Bloxom*, 512 So. 2d 839, 841 (La. 1987); *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 793 (E.D. La. 2011).

[72] *See supra* Part I.

[73] *Bell v. Uniroyal, Inc.*, 96-2838 (La. App. 4 Cir. 6/11/97), 696 So. 2d 268, 270. *See also Brown v. Sears, Roebuck & Co.*, 516 So. 2d 1154, 1155 (La. 1988) ("A determination of whether a particular warning is adequate is a question of fact, to be made by balancing a number of factors, such as the likelihood the warning will convey the nature of the danger to the users, the intensity and form of the warning, and the cost of improving the strength or mode of the warning.").

[74] R. Doc. 93-20 at 17–18.

[75] R. Doc. 102-13 at 15. *See also* R. Doc. 93-14 at 17–18, 29, 35 (opining that the sharp corners of the drain assembly caught on the air cell, causing it to fail and that "I do not believe [Thibodeaux] would have been injured had the air cell not failed").

Thibodeaux argues in his opposition that the very existence of a sophisticated-user affirmative defense is "suspect."[76] Thibodeaux also argues that, even if the sophisticated-user affirmative defense exists, Pentair has failed to plead it as an affirmative defense.[77]

"The only provision of the LPLA that affords a basis for arguing or guessing that manufacturers' liability is limited by a sophisticated user or purchaser defense is section 2800.57(B)(2)."[78] Under La. Rev. Stat. § 9:2800.57(B), a manufacturer is not required to provide an adequate warning about its product when "[t]he user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic."[79]  Thus, if the sophisticated-user defense is available to Pentair, it would provide a defense only to Thibodeaux's claim that the tank was unreasonably dangerous due to an inadequate warning. Even if Pentair prevailed on this point, Thibodeaux might be entitled to recover under other theories.[80]

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that Pentair's motion for summary judgment is **DENIED**.

**New Orleans, Louisiana, this 27th day of May, 2016.**

_____

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[76] R. Doc. 101 at 30. *See also Swope v. Columbian Chemicals Co.*, 281 F.3d 185, 207 (5th Cir. 2002) ("Subsequent to the enactment of the LPLA and this court's decision in *Davis* one Louisiana intermediate appellate court has expressed uncertainty as to whether the LPLA perpetuates a sophisticated purchaser or user defense." (citing *Black v. Gorman–Rupp*, 655 So.2d 717, 722 (La. App. 4th Cir. 1995))).
[77] R. Doc. 101 at 30.
[78] *Swope*, 281 F.3d at 206.
[79] LA. REV. STAT. § 9:2800.57(B).
[80] *See supra* Part II.A.