UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| JOEL C. THIBODEAUX, | CIVIL ACTION |
| Plaintiff | |
| VERSUS | NO. 12-1375 |
| WELLMATE, ET AL. | SECTION: "E" (5) |
| Defendants | |

## ORDER AND REASONS

Plaintiff Joel Thibodeaux claims that Defendant Pentair Water Treatment OH Company is liable under the Louisiana Products Liability Act as a manufacturer of the Wellmate 12 water pressure tank.

On Friday, June 3, 2016, Mr. Thibodeaux rested his case. Pentair then moved for judgment as a matter of law in open court pursuant to Rule 50 of the Federal Rules of Civil Procedure. The Court heard oral argument in open court, and both parties have submitted written memoranda to the Court.[1]

"A party is entitled to judgment as a matter of law only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 455 (5th Cir. 2001). When considering a motion for judgment as a matter of law, the court does not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury. *Id.* at 455–56. Rather, judgment as a matter of law is only appropriate if there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-movant. *Paige v. Cochran*, 212 F.3d 595 (5th Cir. 2000). The movant must show a lack of

---

[1] Plaintiff's opposition to the motion for judgment as a matter of law is contained in Record Document 197. Defendant submitted its memorandum in support of its motion in court but has not filed it on the record electronically.

1

substantial evidence supporting the non-movant's position and that all reasonable persons would draw the same conclusion. The evidence must be viewed in the light most favorable to the non-movant, and all reasonable inferences must be drawn in favor of the non-movant. *Id.*; *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 622 (5th Cir. 2008).

There are three separate theories of liability under the LPLA that are applicable to Mr. Thibodeaux's claims against Pentair: (1) liability based on construction or composition; (2) liability based on design; and (3) liability based on inadequate warning. Pentair has moved for judgment as a matter of law on all of Mr. Thibodeaux's claims.

First, with respect to Mr. Thibodeaux's claim for liability under the LPLA based on construction or composition, Ms. Cynthia Smith testified that the bladder of the Wellmate 12 tank contained manufacturing defects. Pentair argues, however, that Ms. Smith never connected the defects she identified to the cause of Mr. Thibodeaux's accident.

Ms. Smith testified that the Wellmate 12 tank at issue in this case contained manufacturing defects. For example, she testified that the bladder contained voids, or bubbles, in the polyethyl urethane material and that the bladder failed to meet Pentair's or Bayer's specifications.

To prevail on his claim for liability under the LPLA based on construction or composition, Mr. Thibodeaux also must prove the manufacturing defects proximately caused the accident at issue. Mr. Thibodeaux points to Ms. Smith's testimony that these manufacturing defects were a contributing cause of this accident.

A defect may be a proximate cause of damage even though it operated in combination with some other cause. Where there are concurrent causes of an accident, the proper inquiry is whether the conduct in question was a substantial factor in bringing about the accident. *In re Katrina Canal Breaches Consolidated Litigation*, 2011 WL 1792542, at *20 (E.D. La.

Jan. 20, 2011); *Hennegan v. Cooper/T. Smith Stevedoring Co.*, 837 So. 2d 96, 102 (La. App. 4 Cir. 12/30/02). There can be more than one substantial factor that causes an accident. *Hennegan*, 837 So. 2d at 102; *Westchester Fire Insurance Co. v. Haspel-Kansas Investment Partnership*, 342 F.3d 416, 421 (5th Cir. 2003).

Smith testified that the manufacturing defects she identified were contributing causes of this accident. For example, she testified that, "in this case, with absolute certainty, [we know] those voids did contribute to this failure."[2] Ms. Smith testified that the voids in the bladder "would have made [the Wellmate tank] fail more rapidly."[3]

The Court finds there is legally sufficient evidence from which a reasonable jury could conclude there was a manufacturing defect in the Wellmate tank that was a substantial cause of the accident. Thus, a reasonable jury could find in Mr. Thibodeaux's favor on his LPLA claim based on construction or composition.

Second, Pentair argues that Mr. Thibodeaux's claim for liability under the LPLA based on design must fail because Mr. Thibodeaux has not established an alternative design that was capable of preventing this accident.

The bladder in the tank at issue was attached to both the top and the bottom of the tank. Many witnesses, including Edward Lebreton, Matt Duhon, Fred Adams, and Joel Voytek, testified about an alternative design that currently exists and is in wide use; they testified that the design most typically seen attaches the bladder only to the top of the tank. In fact, these witnesses testified they had never seen a tank in which the bladder was attached to the top and the bottom of the tank before.

---

[2] Trial Tr. Day 2 p.m. at 146.
[3] *Id.* at 147.

Pentair argued that, because no expert testified about this alternative design, Mr. Thibodeaux's claim for liability based on defective design fails. Both the U.S. Court of Appeals for the Fifth Circuit and Louisiana courts have recognized that there may be cases in which expert testimony is not needed—cases in which "the judge or the jury, by relying on background knowledge and common sense, can fill in the gaps in the plaintiff's case, estimating the extent of the risk avoided, the costs of implementing the proposed design change, or the adverse effects of the design modification on the utility of the machine. However, in order for this to be possible, the product itself, or at least the design feature in question, must be relatively uncomplicated, and the implications of the change in design must be such that a layman could readily grasp them." *McKey v. Gen. Motors Corp.*, 691 So. 2d 164, 170 (La. App. 1 Cir. 2/14/97); *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 184 (5th Cir. 1990); *Krummel v. Bombardier Corp.*, 206 F.3d 548, 555 (5th Cir. 2000).

This is the kind of case in which the design feature in question, attachment of the bladder to the bottom of the tank, is relatively uncomplicated and the implications of the change in design is such that a layman could readily grasp them. Therefore, this is a case in which expert testimony on the alternative design is not necessary.

Pentair also argues there was no evidence that an alternative design would have been capable of preventing the accident. Ms. Smith testified, however, that "if the air cell had not been attached [to the drain assembly] it would not have twisted at all. It twisted because of the design. It was attached to the bottom of the drain assembly."[4] She testified

---

[4] Trial Tr. Ms. Smith at 33–34.

that, "without question," the attachment of the bladder to the bottom of the tank "absolutely" contributed to this accident.[5]

The Court finds there is legally sufficient evidence that there was an alternative design capable of preventing Mr. Thibodeaux's damage. A reasonable jury could find that the Wellmate 12 tank was unreasonably dangerous in design and that the design defects proximately caused Mr. Thibodeaux's injuries.

Finally, Pentair moves for judgment as a matter of law on Mr. Thibodeaux's LPLA claim for inadequate warning. Pentair argues that Mr. Thibodeaux has failed to establish proximate cause because Mr. Thibodeaux, Mr. Adams, and Mr. Duhon all testified that the warning Pentair alleges it placed on the tank at the time of manufacture was clear and that, if they had read the warning, they would have followed it.

Mr. Thibodeaux, Mr. Adams, and Mr. Duhon all testified there was no warning on the tank at the time of the accident. Joel Voytek, Pentair's project manager, testified that, based on the photographs he examined, there was no evidence of a label on the drain assembly.[6] Mr. Voytek also testified that Wellmate tanks are commonly used outdoors. The plaintiff points to testimony regarding the visibility of the tank's primary label, which is still visible on the tank today, and argues that the warning's lack of presence on the tank at the time of the accident indicates that Pentair's warnings were not adequate to withstand outdoor environmental conditions, exposure to which Pentair should have known would degrade any warning labels.

The Court finds there is legally sufficient evidence from which a reasonable jury could conclude the tank was unreasonably dangerous because Pentair failed to provide an

---

[5] *Id.*
[6] Trial Tr. Day 2 p.m. at 54.

5

adequate warning and that this unreasonably dangerous characteristic caused Mr. Thibodeaux's injuries.

Accordingly;

**IT IS ORDERED** that Pentair's motion for judgment as a matter of law on all of Mr. Thibodeaux's claims is **DENIED**.

**New Orleans, Louisiana, this 6th day of June, 2016.**

                               _____
                                     **SUSIE MORGAN**
                          **UNITED STATES DISTRICT JUDGE**